UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| MELISSA MCFALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 7:24-CV-17-REW |
| | ) | |
| COMMISSIONER OF SSA | ) | OPINION & ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Melissa McFall appeals the denial of her application for Disability Insurance Benefits ("DIB"). *See* DE 1. She moved for judgment following the Commissioner's answer. *See* DE 10. The Commissioner responded in opposition to the motion, requesting affirmance of the underlying Administrative Law Judge ("ALJ") decision, *see* DE 12, and McFall replied, *see* DE 13. The administrative record appears at DE 9 ("R." Administrative Transcript) as part of the Commissioner's answer. After reviewing the record, with particular emphasis on the limited portions McFall challenges, the Court finds the ALJ's determination supported by substantial evidence and compliant with Agency rules and regulations. Accordingly, the Court **DENIES** McFall's motion and affirms the ALJ's denial.

I.  **Relevant Background**

McFall protectively applied for DIB on July 13, 2021, alleging disability beginning on October 1, 2020. *See* R. at 166–67. She alleged a slew of disabling conditions, including arthritis, high blood pressure, high cholesterol, diabetes, and mental conditions including depression and anxiety. *See* R. at 184. The agency denied her claim initially, *see* R. at 83–84, and again on reconsideration, *see* R. at 89–90, eventually leading to an administrative hearing before ALJ

1

Davida Isaacs. *See* R. at 36–53. On March 27, 2023, in a 13-page opinion, Judge Isaacs concluded that McFall was not "disabled" within the meaning of the Social Security Act. *See* R. at 17–30. The Appeals Council upheld the decision, *see* R. at 1, and this appeal ensued.

Judge Issacs's opinion tracked the standard five-step evaluation sequence laid out in 20 C.F.R. § 404.1520. First, Judge Issacs concluded that McFall "has not engaged in substantial gainful activity since October 1, 2020." *See* R. at 19. Second, she concluded that McFall's degenerative disc disease, mild concentric left ventricular hypertrophy, chronic colitis, pulmonary disease, and obesity qualified as severe impairments under 20 C.F.R. § 404.1520(c). *See* R. at 20.

As part of the step two analysis, and as particularly relevant to McFall's narrow appeal, Judge Issacs thoroughly assessed the effect of McFall's medically determinable mental impairments. *See id.* at 20–21. She concluded, based on the medical evidence, examination materials, and McFall's own statements, that McFall's depression and anxiety caused only mild, nonsevere impairments as to each of the four "paragraph B" criteria.[1] Addressing, without limitation, McFall's particular complaint that she struggled with concentration and ability to complete tasks, Judge Issacs concluded that mental status examinations were "generally stable longitudinally," with McFall being oriented to person, place, and time, cooperative, exhibiting appropriate judgment and memory, along with normal thought processes, appropriate mood and affect. *See id.* at 20. Judge Issacs also found apparent contradictions between McFall's complaints of mental functioning impairments and her own reports. Through hearing testimony, McFall reported the ability to attend to her personal care needs, drive a car, shop, prepare simple meals, do laundry, play guitar, and visit with family. *See id.* at 21. To Judge Issacs, this degree of reported

---

[1] Paragraph B calls on reviewing officials to consider a claimant's ability to (1) understand, remember or apply information, (2) interact with others, (3) concentrate, persist or maintain pace, and (4) adapt or manage oneself. 20 C.F.R. 404, Subpart P, Appendix I.

2

activity "does not support a finding that [McFall] has more than mild limitations in her mental functioning." *See id.* Judge Issacs supported the conclusion with reference to two psychological assessment opinions, found to be persuasive, opining that McFall's mental impairments result in no more than mild limitations in her mental functioning. *See id.* at 21–22. Those reviewers specifically opined that McFall's mental impairments, "singly or combined, do not significantly interfere with Clmt's ability to perform BWA's." *See, e.g.*, R. at 70. Judge Issacs found the opinions persuasive, in part, because they were supported by citations to the record and consistent with subsequent evidence documenting normal mental status exam findings and generally stable mental status examination findings. *See id.*

At the fourth step, Judge Issacs determined McFall's Residual Function Capacity ("RFC"). *See* R. at 24–28. She found that, based on McFall's impairments, she could perform "sedentary work," except that, among other things, she "must avoid fast-paced tasks, such as those involving assembly lines, rush hours, and work involving production quotas that are hourly or more frequent." *See* R. at 24. Importantly, Judge Issacs specifically acknowledged her obligation to follow SSR 96-8p, thus, to consider "all of the claimant's impairments, including impairments that are not severe." R. at 19. Further, she segregated the step two and step four analyses, *id.* at 21, noted the analytical distinction imposed in SSR 96-8p, *see id.*, and specifically indicated the RFC came "[a]fter careful consideration of the entire record[.]" R. at 22. She further specifically stated that the RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." *Id.* at 21.

In reaching McFall's RFC determination, Judge Issacs heavily considered record evidence of McFall's physical ailments. She determined that despite reports of extensive and debilitating physical symptoms, including neck and back pain, shortness of breath, difficulty sitting and

3

walking, among many others, that much of the medical evidence noted normal findings in many of these areas. *See id.* at 25 (noting that medical evidence often showed no distress, normal respiratory effort, normal motor strength, normal gait, and intact cranial nerves). To be sure, these complaints meant more than nothing to Judge Issacs. She noted that "objective studies demonstrated some abnormal findings that support the claimant's subjective reporting symptoms," but the evidence fell short of the "degree of limitation as alleged by the claimant." *See id.* at 25–26. In reaching this conclusion, Judge Issacs considered voluminous exhibits and physical examinations from medical consultants and squared the medical evidence rationally with McFall's subjective reports of her conditions. In all, Judge Issacs concluded that "while the objective evidence does indicate that the claimant has severe impairments for which she continues to have ongoing symptoms and limitations, it does not support a finding that the claimant is more severely limited." *See id.* at 29.

Critically to this narrow appeal, in articulating McFall's RFC, Judge Issacs gave little mention to McFall's reported anxiety and depression. Judge Issacs's RFC determination did reference McFall's reports of difficulty concentrating, but it credited those challenges to physical ailments, rather than mental impairments. *See* R. at 24 ("The claimant also alleges difficulty with her concentration and her ability to complete tasks due to her pain symptoms."). However, outside of that isolated reference, Judge Issacs's RFC determination at step four did not feature detailed analysis concerning McFall's RFC determination and her omission of the mental impairments highlighted at step two. That is the crux of this appeal.

Lastly, Judge Issacs, after considering McFall's age, education, and RFC, found that McFall was "capable of performing past relevant work as a [b]ookkeeper." *See id.* at 29. Judge Issacs cited testimony from a Vocational Expert ("VE"), heard at the disability determination

4

hearing, that an individual with McFall's RFC could sustain work as a bookkeeper, meeting the physical and mental demands that accompany the role. *See* R. at 29. Based on consideration of the full record and testimony from the VE, Judge Issacs concluded that McFall was not "disabled" under the Act and denied the sought benefits. *See* R. at 30.

McFall unsuccessfully sought review of Judge Issacs's decision from the Appeals Council. *See* R. at 1. The Council's denial rendered the ALJ's decision final for purposes of judicial review. McFall now seeks judicial review of the agency's determination under 42 U.S.C. § 405(g), particularly challenging the ALJ's treatment of McFall's mental impairments in fashioning the RFC as step four. In particular, McFall calls the appeal issue "solely whether it was legal error for the ALJ to omit Plaintiff's proven mental functional limitations from the RFC finding without explanation." *See* DE 10 at 6 n.1.

## II. Standard of Review

Judicial review of an ALJ's disability determination, *see* 42 U.S.C. §§ 405(g), (h), is a limited and deferential inquiry, turning on the narrow question of whether substantial evidence supports the decision and whether the ALJ properly applied the relevant legal standards. *Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 496 (6th Cir. 2019) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence signals deference, not infallibility. A determination satisfies the standard when it is supported by "more than a scintilla of evidence but less than a preponderance." *Rogers*, 486 F.3d at 241. It requires no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In making the determination, the Court tunes

its inquiry to the sufficiency of the evidence supporting the ALJ's analysis. It does not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Indeed, if substantial evidence could support either a favorable or an unfavorable determination, reversal is unwarranted. *See id.* at 713 ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion."). The Court's take on the merits has no bearing—it must affirm the agency decision, if support by substantial evidence, even if it may have decided the case differently if standing in the ALJ's shoes. *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011).

In making its determinations, the ALJ must faithfully heed agency rules and regulations. An ALJ's failure to properly apply and follow applicable law "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("It is an elemental principle of administrative law that agencies are bound to follow their own regulations."). For example, SSA regulations define the applicable rubric an ALJ must follow in assessing and evaluating medical opinions. *See* 20 C.F.R. §§ 404.1520c(a), (b)(2), (c)(1)–(5). The Court may remand a claim if it finds that the ALJ skirted such requirements, and in doing so, prejudiced the plaintiff. *See Rabbers v. Comm'r of Soc. Sec.*, (6th Cir. 2009) (explaining that, even if the agency commits procedural error, remand in not appropriate unless "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.").

The ALJ conducts a five-step, heavily structured inquiry to determine a claimant's purported disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20

C.F.R. § 404.1520(a)(4). The ALJ first considers whether the claimant is performing substantial gainful activity. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether one or more of the claimant's impairments are severe. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(ii). Thirdly, the ALJ analyzes whether the claimant's impairments, individually or in combination, meet or equal an entry in the Listing of Impairments. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ defines the RFC and considers whether the claimant can perform past relevant work. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(iv). The inquiry focuses on the type of relevant work, not the exact position previously held by the claimant. *See Studaway v. Sec'y of Health & Hum. Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at step five, when the burden of production shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(v). If, at any step, the ALJ determines that the claimant is not disabled, the analysis ends. *Id.* § 404.1520(a)(4).

Relevant here, the Commissioner follows a special technique to evaluate the severity of mental impairments and the associated functional consequences on the claimant's ability to work. 20 C.F.R. § 404.1520a(a). In applying the special technique, the ALJ must first decide whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b)(1). If the claimant does, the ALJ must next rate the degree of the functional limitation resulting from the claimant's medically determinable mental impairment(s), in four broad functional areas: the ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* § 404.1520a(c)(3). To complete this step, the ALJ uses a five-point scale, rating the degree of limitation in each functional area as either none,

mild, moderate, marked, or extreme, with the last point on the scale representing "a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* § 404.1520a(c)(4). The ALJ's degree-of-limitation ratings then inform whether the impairment is severe or nonsevere and whether the claimant meets an impairment in the Listing of Impairments at step three. *Id.* § 404.1520a(d).

**III.   Analysis**

McFall challenges but one aspect of the ALJ's RFC finding at step four. She alleges that Judge Issacs's failure to consider the effects of her anxiety and depression at step four amounts to a failure to follow Agency rules and regulations. *See generally* DE 10.

Sixth Circuit precedent, as applied and articulated by district courts in the Circuit, makes clear that although an ALJ may not entirely disregard mild mental impairments in reaching a disability determination, there is no requirement that the ALJ "specifically discuss each non-severe impairment in the RFC assessment to demonstrate that the impairments were considered." *Smith v. Comm'r of Soc. Sec.*, 715 F. Supp. 3d 994, 999 (E.D. Mich. 2024); *see also Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020) (finding that while "the ALJ did not specifically discuss the combined effect of Emard's impairments or mention Emard's nonsevere impairments in assessing his [RFC]," the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p by stating that "she had carefully considered the entire record and 'all symptoms' at this step in the process," citing that her decision was controlled by SSR 96-8p, and discussing "the functional limitation imposed by Emard's nonsevere impairments at step two"); *Heidi L. v. Comm'r of Soc. Sec.*, No. 23-10366, 2024 WL 1256284, at *1 (E.D. Mich. Mar. 25, 2024) ("[A]n ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment . . . when the ALJ makes clear that [his] decision is controlled by SSR 96-8p."); *Mary E. O. v. O'Malley*, No.

8

3:23-CV-00344-CRS, 2024 WL 3876477, at *9 (W.D. Ky. July 24, 2024), *report and recommendation adopted sub nom. Mary O. v. O'Malley,* No. 3:23-CV-00344-CRS, 2024 WL 3868249 (W.D. Ky. Aug. 19, 2024) ("The Parties agree that an ALJ is not required to incorporate mild mental impairments into an RFC assessment."); *Phillips v. Comm'r of Soc. Sec.*, No. 3:22-cv-01144, 2023 WL 4078204, at *6 (N.D. Ohio Apr. 4, 2023) ("[M]ild limitations do not automatically mandate specific limitations in the RFC."). That's not to say that an ALJ can simply put all nonsevere mental impairments to bed after step two. In composing an RFC, the ALJ is nonetheless required to "consider a claimant's non-severe mental health limitations but is not required to inevitably incorporate them in the RFC." *Miller v. O'Malley*, No. 5:23-CV-209-HAI, 2024 WL 315685, at *7 (E.D. Ky. Jan. 26, 2024).

The decision at issue shows, on full consideration, that Judge Issacs appropriately considered McFall's mental impairments, even if she did not affirmatively discuss the matter in detailing her RFC conclusion. Several plain markers of her assessment appear. Judge Issacs concluded her step two analysis by acknowledging the distinction between an impairment determination and the RFC finding:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

R. at 21 (referencing the tenets of SSR 96-8p). As other courts have noted when facing similar arguments, this "clarification demonstrates that [Judge Issacs] considered [McFall's] mild limitations in later assessing her RFC." *Mary E. O.*, 2024 WL 3876477, at *10; *see also Jessica H. v. O'Malley*, No. 3:23-CV-00123-RSE, 2024 WL 1075225, at *4 (W.D. Ky. Mar. 12, 2024)

9

(finding no error where ALJ omitted overt discussion of moderate mental limitations in crafting RFC). Likewise, Judge Issacs's RFC determination is consistently aimed, as is proper, at the full record of medical evidence presented, both physical and mental. *See* R. at 22 ("I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."), 24 ("In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ."), 25 ("In this case, the evidence reflects that the claimant has been diagnosed with physical and mental impairments . . . ."), 27 ("[T]o accommodate the claimant's impairments, I have limited her to work at the sedentary exertional level with the environmental and non-exertional limitations detailed above. A review of the evidence does not support a finding that the claimant requires any additional limitations.").

Interestingly, McFall derides as "macros" or "boilerplate" most of these markers of procedural propriety. To the Court, though, they are blazes along the lawful analytical trail. And while McFall might desire a different approach, the Sixth Circuit readily infers proper handling from records of this nature. As *Emard* recognizes, an ALJ's acknowledgement of required standards backed by particularized record review supports the inference of regulatory compliance. *See Emard*, 953 F.3d at 851–52 (noting, "[a]s in *Gooch*, the ALJ's statements that she had considered the entire record and all of Emard's symptoms suggest that she had considered Emard's impairments in combination"). And further, critical here, an ALJ acknowledging the requirements of SSR 96-8p, when paired with a plenary step two analysis, can validate the propriety of an RFC formulation that elides discussion of mild impairments. *See id.* ("The ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with

10

20 C.F.R. § 416.945(e) and SSR 96-8p."). This framework, issued by the Sixth Circuit, squares with Judge Issacs's approach.

To be sure, Judge Issacs cannot merely pay lip service to mental impairments to satisfy her RFC obligations. *See Johnson v. Colvin*, No. CV 7:15-039-DCR, 2016 WL 3257124, at *3 (E.D. Ky. June 13, 2016) (boilerplate language that ALJ "considered all evidence" insufficient to satisfy RFC obligations). But here, the medical evidence at the mental impairment level—prompting findings of mild impairment—logically lends itself to less discussion in the RFC context, given the limited effect the mental limitations were determined to have on McFall at step two. True, the two steps are distinct—the law on that point is clear, as was Judge Isaacs. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2). But that does not mean that the two inquiries have no relation. *See Harrington v. Kijakazi*, No. CV 3:22-67-KKC, 2024 WL 420109, at *3 (E.D. Ky. Feb. 5, 2024) (finding omission of mental impairments of RFC justified where "substantial evidence" supported the result at step two). Surely, a step two finding of severe impairment would typically require more in-depth treatment of the impairment in crafting the RFC. Conversely, as is the case here, a finding of mild impairment would logically lend itself to less discussion at the RFC stage. *See Stephen T. C. v. Comm'r of Soc. Sec.*, No. 1:23-CV-10821, 2024 WL 948592, at *7 (E.D. Mich. Mar. 5, 2024) ("[I]n evaluating the ALJ's reasoning, the Court should take common sense, not technical perfection as its guide.") (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012)) (internal quotations omitted).

Judge Issacs's step two analysis shows careful consideration of the mental impairment evidence in the record, and more importantly, sheds light on why the impairments had little effect on McFall's RFC. In finding the impairments nonsevere, Judge Issacs considered objective medical evidence, squared assessment opinions with the whole of the record, finding some

11

persuasive and one not, and considered whether McFall's own reports comported with the objective medical evidence. *See* R. at 20–22. Indeed, she specifically grappled with the views of Dr. Lima and with those of the State Agency consultants. Finding that the balance of the objective medical evidence showed McFall was "generally stable longitudinally, with the claimant being noted, at times, to be in no distress, to be alert and oriented to person, place, and time, to be cooperative, to be well-kempt, to be well-groomed, to exhibit appropriate judgment, to exhibit appropriate memory, to exhibit appropriate insight, to exhibit normal thought content, to exhibit normal thought processes, to exhibit normal speech, to exhibit appropriate mood, and to exhibit appropriate affect," Judge Issacs concluded that McFall's anxiety and depression caused no more than mild effects and were thus nonsevere. *See id.* at 20 (citing numerous exhibits of medical evidence in support). This careful treatment at step two, ending in a nonsevere determination, sheds light on why the RFC did not require further scrutiny of McFall's mental impairments. The objective medical evidence, as Judge Issacs found, demonstrated that "mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." *See* R. at 21 (citing 20 C.F.R. § 404.1520a(d)(1)). If the mental impairments were nothing more than mild and caused no more than minimal limitations, logically, the only thing Judge Issacs could do to satisfy McFall is recite again the medical evidence in the RFC analysis to find that no further RFC limitations were required. Nothing requires that cumbersome formalism. *See Stephen T. C.*, 2024 WL 948592, at *7 (Courts' inquiry should turn on "common sense, not technical perfection"). After all, an RFC is simply "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The adjective "mild" imports that

12

functioning is "slightly limited." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2b. It's fair to consider the full decision and determine that Judge Issacs simply adjudged the limitations as too slight to register in the RFC.

Judge Isaacs recites in her opinion, in no uncertain terms, that she assessed the mental impairments and reflected them aptly in the RFC: "The [RFC] assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." R. at 21. Within step two, Judge Isaacs stated the standards correctly and marshalled the full record, including the confirmatory state reviewer opinions. Judge Isaacs also had the benefit of the hearing, where McCall mentioned depression only in passing, remarking that her medications were effective and that she had not seen a mental health provider since "years ago." R. at 45. The meds prescribed by her family doctor "help." R. at 46. In constructing the RFC, Judge Isaacs considered "the entire record," R. at 24, "considered all symptoms," *id.*, referenced "mental impairment(s)" in the two-step process, *id.*, and plainly acknowledge the duty to consider "all of the claimant's impairments, including impairments that are not severe" in the RFC finding. R. at 19. Her faithful and express recognition of the proper standards and detailed treatment of the non-severe impairments in step two suffice, under the principles of *Emard*.

McFall relies heavily on *Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013), requesting the Court to "adopt the well-reasoned, published decision of the Tenth Circuit." *See* DE 10 at 14. The Court skips over the fact that this case is merely persuasive authority and moves to the more important reason this case does not compel a favorable result for McFall. There, the Tenth Circuit found that the ALJ improperly *substituted* the step two analysis for the RFC assessment, finding that nonsevere mental impairments resulted in no further RFC limitations at step two. *See id.* at 1069 ("Here, after stating his conclusion that Ms. Wells' mental impairments were non-severe, the

ALJ stated that '[t]hese findings do not result in further limitations in work-related functions in the [RFC] assessment below.'"). The ALJ's error, quite distinct from this case, was using the step two impairment analysis to make an RFC determination, not that the ALJ failed to properly consider nonsevere mental impairments at step four. That error violated Agency regulations requiring siloed analysis at each step of the disability determination. *See* 20 C.F.R. §§ 404.1545(a)(2). Indeed, later Tenth Circuit precedent confirmed that this was the central issue requiring remand. *See Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) ("Significantly, the ALJ did not make any ancillary statement, like that made by the ALJ in *Wells*, affirmatively suggesting an improper conflation of the step-two and step-four assessments.").

Judge Issacs's opinion presents no such issues. Throughout, she affirmatively recognizes the separation between the step two and the step four analyses. *See* R. at 21 ("The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process . . . . The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis."), 22 ("I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."). Any suggestion of conflation would not be supportable. And importantly, other Tenth Circuit precedent not addressed by McFall seems to support Judge Issacs's approach. *See Beasley v. Colvin*, 520 Fed. App'x. 748, 754 (10th Cir. 2013) ("The ALJ was under no obligation to include limitations in social functioning in Ms. Beasley's RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."); *Suttles*, 543 F. App'x at 826 (Because "the ALJ did not make any ancillary statement, like that made by the ALJ in *Wells,* affirmatively suggesting an improper conflation of

the step-two and step-four assessments . . . we hold that the ALJ conducted a mental RFC assessment separate from the non-severity determination made at step two.").

## IV.   Conclusion

Judge Issacs does not "leave the Court to speculate as to why [she] did not find that [McFalls'] anxiety and depression caused functional limitations." *Stephen T. C.*, 2024 WL 948592, at *7 (finding no error where ALJ considered mental impairment evidence at step two and omitted it as part of the RFC determination).[2] Accordingly, the Court **DENIES** DE 10, McFall's request for judgment, and **AFFIRMS** the Agency decision under sentence four of 42 U.S.C. § 405(g). The Court will enter a separate judgment.

This the 31st day of January, 2025.



Signed By:
*Robert E. Wier*
United States District Judge

---

[2] Although she might have spared this appeal through a more complete recitation at step four, perfection is not the standard. Not every painting should hang in a museum; Judge Issacs's opinion was merely adequate, resting on substantial evidence, and compliant with the apt regulations as interpreted in this Circuit. It is not an exemplar for explanation but did clear the bar.